1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAFT L. THOMPSON,                      No.  2:22-cv-1196 TLN DB P

12                  Petitioner,

13       v.                                 FINDINGS AND RECOMMENDATIONS

14   L. BIRD,

15                  Respondent.

16

17          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   under 28 U.S.C. § 2254.  Petitioner challenges his convictions imposed by the Sacramento

19   County Superior Court in 2018 for attempted murder with a dangerous and deadly weapon, child

20   abuse likely to produce great bodily injury, and three counts of assault with a deadly weapon.

21   Petitioner alleges ineffective assistance of counsel in violation of his Sixth Amendment rights.

22   For the reasons set forth below, this court will recommend the petition be denied.

23                                    **BACKGROUND**

24   **I.  Facts Established at Trial**

25          The California Court of Appeal for the Third Appellate District provided the following

26   factual summary:

27   ////

28   ////

*I*

*The Facts*

After spending the night with Misty W. and several friends at Misty W.'s aunt's house, Ronald K. drove Misty W. to pick up her infant daughter from a relative's house the next morning. They picked up Misty W.'s child and then drove back to her aunt's house. When they arrived, defendant had parked a U-Haul truck out front. Defendant told Misty W. he was changing the locks and "getting all [Misty W.'s aunt's] shit out of" the house. He told Misty W. that if she did not tell him where her aunt was, "then we're going to have a problem."

Ronald K. went inside the house, where he noticed the window in the house was broken and the dog was missing. He walked outside, where defendant was seated inside the parked U-Haul. Ronald K. knocked on the U-Haul's window, but when defendant did not respond and began to pull the U-Haul away, Ronald K. walked towards his car so he could go out looking for the missing dog. As Ronald K. stood inside the "V" of the driver's side door of his car, defendant floored the U-Haul's accelerator and smashed into Ronald K., pinning him against his car. Defendant backed up and hit Ronald K. four more times. Ronald K. was able to get into the car, which defendant continued to back up and hit several more times. Misty W. came out of the house with her baby. Defendant drove the U-Haul towards Misty W., who threw her baby into the grass to avoid the path of the U-Haul. Defendant pinned Misty W. against the garage, backed up, and drove into Ronald K.'s car again. The truck got stuck and the police arrived shortly thereafter. When Misty W. asked defendant why he tried to hit her and her baby, he responded, "I wanted to kill you guys." Ronald K. and Misty W. were both treated for injuries.

*II*

*The Trial*

Defense counsel made a brief opening statement, asking the jury "to find [defendant] not guilty of the seven charges as he didn't commit actual crimes on June 2nd." After the prosecution began to present its case, defendant asked to make a *Marsden* motion.[fn 1] At the *Marsden* hearing, defendant said he was unhappy that his attorney did not more aggressively challenge a witness on his testimony that defendant said he was going to kill Ronald K., which defendant claimed was untrue. Defendant further asserted that he wanted his attorney to present defendant's statement to a police officer, saying that Ronald K. had threatened defendant prior to defendant's assault. The trial court denied defendant's request to relieve his attorney, finding she had properly represented defendant, and noting that the parties were constrained by the rules of evidence and the trial court's rulings on evidentiary issues. The trial court said that defendant's attorney could best explain their trial strategy to defendant "when the time is right," and reminded defendant that they had not yet put on their defense case.

During closing arguments, defense counsel stated: "[Defendant] is guilty. He is guilty of the committing [sic] an assault, he is guilty of false imprisonment, and he is guilty of vandalism. He is not guilty of attempt[ed] murder on Misty [W.] or [Ronald K.], he is not guilty of child abuse likely to produce great bodily injury or death on the child, and he's not guilty of an assault with a deadly weapon."[fn 2] With respect to self-defense, defense counsel noted that she "sort of glossed over the self-defense instruction" but that the jury did not "even have to discuss self-defense because you're not going to find that the district attorney has proved beyond a reasonable doubt that on June 2nd [defendant's] actions were coupled with an intent to kill."

The jury was instructed on two counts of attempted murder with a deadly and dangerous weapon (Pen. Code, §§ 664, 187, subd. (a), 12022, subd. (b)(1)),[fn 3] felony child endangerment (§ 273a, subd. (a)), and three counts of assault with a deadly weapon (§ 245, subd. (a)(1)). As to the felony assault charges, the jury instructions also included the lesser included offense of simple assault. The jury was further instructed that self-defense was a defense to the assault charges.

[fn 1] *People v. Marsden* (1970) 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44.

[fn 2] Although defense counsel stated that defendant was guilty of simple assault, false imprisonment, and vandalism, defendant was not charged with, and the jury was not instructed on, false imprisonment or vandalism.

[fn 3] Undesignated statutory references are to the Penal Code.

People v. Thompson, No. C088523, 2021 WL 5754881, at 1-2 (Cal. Ct. App., Dec. 3, 2021).

## II. Procedural Background

### A. Judgment and Sentencing

The jury found defendant guilty on one count of attempted murder of Ronald K. with a dangerous and deadly weapon, child abuse likely to produce great bodily injury, and three counts of assault with a deadly weapon. They could not reach a verdict on the charge of attempted murder of Misty W., and the trial court granted the People's motion to dismiss the charge.

At sentencing, the trial court commented that the record was "abundantly clear" that defendant still denied the allegations against him. The trial court sentenced defendant to an aggregate term of 16 years plus 75 years to life, comprised of 25 years to life for count one (attempted murder), plus one year consecutive for the weapon use enhancement, 25 years to life for count five (assault with a deadly weapon), 25 years to life for count six (assault with a deadly weapon), plus five years consecutive each for counts one, five, and

six, for a prior strike conviction. Defendant's prison terms for counts three and four were stayed pursuant to section 654.

Id. at 2 (see also ECF No. 13-1 at 201-05, 258[1]).

**B. State Appeal, State Habeas, and Federal Proceedings**

Petitioner filed a timely appeal.  (ECF No. 13-5.)  On December 3, 2021, the California Court of Appeal denied the appeal.  (ECF No. 13-7.)  The California Supreme Court denied his petition for review on February 16, 2022. (ECF No. 13-10.)

Petitioner filed pro se habeas petitions in the state courts, all of which were denied.  He filed his first petition in the Superior Court in December 2018.  (ECF No. 13-11.)  Petitioner then filed a petition in the California Supreme Court in February 2019.  (ECF No. 13-14.)  In January 2020, petitioner filed a petition in the Court of Appeal and, in November 2020, filed a second petition in the Superior Court.  (ECF Nos. 13-13, 13-12.)

On July 8, 2022, petitioner filed the present federal habeas corpus petition.  (ECF No. 1.) He also filed two "supplements" to that petition.[2]  (ECF Nos. 12, 17.)  Respondent filed an answer (ECF No. 14) and petitioner filed a reply (ECF No. 15).

**STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

---

[1] Respondent lodged the state court record.  (See ECF No. 13.)  Unless otherwise indicated, this court cites to the docket's electronic filing numbers and pagination for the state court record.

[2] Whether or not the supplements to the petition are appropriately before the court, this court has reviewed them.  None of the arguments made in those supplements would change this court's opinions herein.  Further, to the extent petitioner is attempting to raise claims he did not raise before the California Supreme Court, those claims are unexhausted and will not be considered here.  See 28 U.S.C. §2254(b)(1).

1
2
3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4
5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6
7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8    For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

9   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

10  Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)

11  (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "'may be

12  persuasive in determining what law is clearly established and whether a state court applied that

13  law unreasonably.'"  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th

14  Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle

15  of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not

16  announced."  Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S.

17  37 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely

18  accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be

19  accepted as correct."  Id. at 64.  Further, where courts of appeals have diverged in their treatment

20  of an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

21  Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

22       A state court decision is "contrary to" clearly established federal law if it applies a rule

23  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

24  precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003)

25  (quoting Williams, 529 U.S. at 405-06).  "Under the 'unreasonable application' clause of §

26  2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct

27  governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that

28  principle to the facts of the prisoner's case.'"  Lockyer v. Andrade, 538 U.S. 63, 75 (2003)

5

1   (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  "[A]

2   federal habeas court may not issue the writ simply because that court concludes in its independent

3   judgment that the relevant state-court decision applied clearly established federal law erroneously

4   or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411;

5   see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not

6   enough that a federal habeas court, in its independent review of the legal question, is left with a

7   firm conviction that the state court was erroneous." (Internal citations and quotation marks

8   omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief

9   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

10  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,

11  664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a

12  state prisoner must show that the state court's ruling on the claim being presented in federal court

13  was so lacking in justification that there was an error well understood and comprehended in

14  existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

15          There are two ways a petitioner may satisfy subsection (d)(2).  Hibbler v. Benedetti, 693

16  F.3d 1140, 1146 (9th Cir. 2012).  He may show the state court's findings of fact "were not

17  supported by substantial evidence in the state court record" or he may "challenge the fact-finding

18  process itself on the ground it was deficient in some material way."  Id. (citing Taylor v. Maddox,

19  366 F.3d 992, 999-1001 (9th Cir. 2004), abrogated by Murray v. Schriro, 745 F.3d 999-1000 (9th

20  Cir. 2014)[3]); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes

21  factual findings without an opportunity for the petitioner to present evidence, the fact-finding

22  process may be deficient and the state court opinion may not be entitled to deference.).  Under the

23  _____

24  [3] In Kipp v. Davis, 971 F.3d 939, 953 n.13 (9th Cir. 2020), the Court of Appeals explained the
    effect of the decision in Murray on Taylor:

25          In Murray I, we recognized that Pinholster foreclosed Taylor's suggestion that an
            extrinsic challenge, based on evidence presented for the first time in federal court, may
26          occur once the state court's factual findings survive any intrinsic challenge under section
            2254(d)(2). Murray I, 745 F.3d at 999–1000. Kipp does not present an extrinsic challenge
27          so Murray I's abrogation of Taylor on this ground is irrelevant here.

    Similarly, in the present case, there is no extrinsic challenge based on evidence presented for the
28  first time in federal court so Murray's limitation of Taylor is not relevant.

"substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record.  Hibbler, 693 F.3d at 1146.

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate."  Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)).  The state court's failure to hold an evidentiary hearing does not automatically render its fact finding process unreasonable.  Id. at 1147.  Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility."  Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'"  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289, 293 (2013).  When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court

1  must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099,

2  1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

3        If a petitioner overcomes one of the hurdles posed by section 2254(d), the federal court

4  reviews the merits of the claim de novo.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir.

5  2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear

6  both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is

7  such error, we must decide the habeas petition by considering de novo the constitutional issues

8  raised.").  For the claims upon which petitioner seeks to present evidence, petitioner must meet

9  the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual

10  basis of [the] claim in State court proceedings" and by meeting the federal case law standards for

11  the presentation of evidence in a federal habeas proceeding.  See Cullen v. Pinholster, 563 U.S.

12  170, 186 (2011).

13                                **DISCUSSION**

14        While not entirely clear, petitioner appears to raise all claims he raised before the state

15  court.  (See ECF No. 1 at 5.)  On appeal, he contended that his trial attorney violated his Sixth

16  Amendment rights by conceding his guilt to simple assault.  Petitioner filed several state habeas

17  petitions.  Petitioner can only succeed on a claim petitioner properly exhausted by raising in the

18  state's highest court.  See 28 U.S.C. §2254(b)(1).  Therefore, this court looks to petitioner's one

19  state habeas petition to the California Supreme Court to determine his remaining claims.  In that

20  state petition, petitioner raised numerous additional claims of ineffective assistance of counsel

21  and one claim of trial court error.

22  **I.  Counsel's Concession that Petitioner Committed Simple Assault**

23        In her closing argument, petitioner's counsel conceded that petitioner committed simple

24  assault:  "[Defendant] is guilty. He is guilty of the [sic] committing an assault, he is guilty of false

25  imprisonment, and he is guilty of vandalism. He is not guilty of attempt[ed] murder on Misty

26  [W.] or [Ronald K.], he is not guilty of child abuse likely to produce great bodily injury or death

27  ////

28  ////

                                        8

on the child, and he's not guilty of an assault with a deadly weapon." (RT 432.[4])  Petitioner

contends counsel violated his Sixth Amendment rights to choose his defense.  Petitioner states

that he chose to rely on self-defense and did not want to concede guilt to even a lesser offense.

### A. Legal Standards

Petitioner relies on the Supreme Court's decision in McCoy v. Louisiana, 584 U.S. ___,

138 S. Ct. 1500 (2018).  In McCoy, the defendant maintained his innocence and insisted he did

not commit the charged offenses.  McCoy, 138 S. Ct. at 1505.  However, at the guilt phase of his

capital trial, defense counsel overrode the defendant's decision to plead innocence and admitted

defendant's guilt to the jury.  Id.  Defense counsel believed that confessing guilt was the best way

to avoid the death penalty.  Id.

The Supreme Court determined that the defendant's Sixth Amendment rights were

violated because the decision to plead innocence or admit guilt was the defendant's decision

alone.  Id.  While "[t]rial management is the lawyer's province," which includes deciding "'what

arguments to pursue, what evidentiary objections to raise, and what agreements to conclude

regarding the admission of evidence," the fundamental decisions about "whether to plead guilty,

waive the right to a jury trial, testify in one's own behalf, and forgo an appeal" are reserved for

the client.  Id. at 1508 (internal citations omitted).  As the Court explained in McCoy, the latter

category of decisions "are not strategic choices about how best to achieve a client's objectives;

they are choices about what the client's objectives in fact are."  Id. at 1508-09.  When, contrary to

the defendant's express wish to maintain his innocence, counsel has admitted the defendant's

guilt, the error is structural and reversal is required without any need to show actual prejudice.  Id.

at 1510-11.

### B. Decision of the State Court

> Defendant contends that defense counsel improperly conceded his
> guilt when she asserted at closing that defendant was guilty of
> committing simple assault.[fn 4]  Relying primarily on *McCoy v.
> Louisiana* (2018) —— U.S. ——, 138 S.Ct. 1500, [200 L.Ed.2d 821]
> (*McCoy*), defendant argues that his attorney violated his Sixth
> Amendment right to counsel by overriding defendant's desire to

---

[4] The Record of Transcript ("RT") is at ECF No. 13-3.

9

maintain his innocence and pursue acquittal. We are not persuaded.[fn 5]

"[C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant ... has 'the ultimate authority' to determine 'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.' [Citations.] Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action." (*Florida v. Nixon* (2004) 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565.) Accordingly, in *McCoy*, the United States Supreme Court held that defendant has the sole authority to decide whether to admit guilt or legal strategy. (*McCoy, supra*, 200 L.Ed.2d at p. 827.)

In *McCoy*, the defendant was charged with three murders and "vociferously insisted on his innocence and adamantly objected to any admission of guilt." (*McCoy, supra*, 200 L.Ed.2d at p. 825.) However, his attorney told the jury in his opening statement that there was " 'no way reasonably possible' that they could hear the prosecution's evidence and reach 'any other conclusion than Robert McCoy was the cause of these individuals' death.' " (*Id.* at p. 828.) The defendant immediately protested, complaining to the trial court outside the jury's earshot that his attorney was " 'selling [him] out' " by admitting he committed the murders. (*Ibid.*) The trial court cautioned the defendant against further outbursts and permitted his counsel to continue his opening statement, during which he repeated that defendant committed the murders. (*Id.* at pp. 828-829.) During trial, the defendant testified on his own behalf, maintaining his innocence, and presenting a highly dubious alibi defense. (Ibid.) In closing, defense counsel "reiterated that McCoy was the killer," telling "the jury that he 'took [the] burden off of [the prosecutor].' " The jury found the defendant guilty of first degree murder on all three counts. (*Id.* at p. 829.)

The defendant filed a motion for new trial arguing that "the trial court violated his constitutional rights by allowing [counsel] to concede McCoy 'committed three murders,' [citation], over McCoy's objection." (*McCoy, supra*, 200 L.Ed.2d at p. 829.) The Louisiana Supreme Court denied the motion for new trial, "ruling that defense counsel had authority so to concede guilt, despite the defendant's opposition to any admission of guilt ... because counsel reasonably believed that admitting guilt afforded McCoy the best chance to avoid a death sentence." (*Ibid.*)

The United States Supreme Court reversed, finding "counsel's admission of a client's guilt over the client's express objection" is structural error, as it "blocks the defendant's right to make a fundamental choice about his own defense." (*McCoy, supra*, 200 L.Ed.2d at p. 826.) It explained that "[w]hen a client expressly asserts that the objective of 'his defen[s]e' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt. [Citations.]" (*Id.* at p. 831.) Thus, the Supreme Court concluded that "admission of [defendant's]

guilt despite [defendant's] insistent objections [is] incompatible with the Sixth Amendment." (*Id.* at p. 834.)

McCoy is only implicated where the attorney concedes guilt "over the defendant's intransigent and unambiguous objection." (*McCoy, supra*, 200 L.Ed.2d at pp. 829, 834.) "When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest" and the defendant remains silent, "counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent." (*Florida v. Nixon, supra*, 543 U.S. at p. 192, 125 S.Ct. 551.) To obtain relief under *McCoy*, the record must show: (1) that defendant's plain objective is to maintain his innocence and pursue an acquittal, and (2) that trial counsel disregards that objective and overrides his client by conceding guilt. (*People v. Eddy* (2019) 33 Cal.App.5th 472, 482-483, 244 Cal.Rptr.3d 872, citing *McCoy*, at pp. 827, 829-833.) "[W]e have found no authority, nor has [defendant] cited any, allowing extension of *McCoy's* holding to a situation where the defendant does not expressly disagree with a decision relating to his right to control the objective of his defense." (*People v. Lopez* (2019) 31 Cal.App.5th 55, 66, 242 Cal.Rptr.3d 451.)

Here, unlike in *McCoy*, defendant did not communicate to his attorney, or to the trial court, that he objected to his counsel's concession of guilt during the closing argument. Although defendant denied guilt and sought to admit evidence supporting the theory that he was acting in self-defense, nothing in the record indicates that he voiced an "intransigent objection" to his counsel's trial strategy to concede that he committed simple assault. Defendant also did not move for a new trial based on his counsel's admission. Without any evidence that defendant objected to counsel's concession, or otherwise made clear to counsel that he did not wish to concede guilt of simple assault during closing arguments, *McCoy* does not apply. (*See, e.g., People v. Lopez, supra*, 31 Cal.App.5th at p. 66 [*McCoy* inapplicable where there was no evidence the defendant objected to his counsel's decision to concede guilt]; *People v. Franks* (2019) 35 Cal.App.5th 883, 891, 248 Cal.Rptr.3d 12 [*McCoy* inapplicable where the defendant denied guilt but never made clear a desire to pursue innocence as his defense.].)

[fn 4] Defendant argues that his counsel improperly conceded guilt on assault, vandalism, and false imprisonment, but only assault is at issue, because defendant was not charged with vandalism or false imprisonment.

[fn 5] The People's brief analyzes this as an ineffective assistance of counsel claim, which is not the correct standard. Under *McCoy*, a counsel's admission of guilt against a defendant's express wishes is structural error, which is not subject to harmless error review. (*McCoy, supra*, 200 L.Ed.2d at p. 833.)

Thompson, 2021 WL 5754881, at *2-3.

////

11

### C. Discussion of <u>McCoy</u> Error

The Court of Appeal correctly cited the legal standard.  In particular, the state court noted the Supreme Court's reliance in <u>McCoy</u> on the fact that petitioner McCoy made continual and "intransigent" objections to any concession of guilt.  The Court stressed that a structural Sixth Amendment violation occurred in the "stark scenario" where "the defendant repeatedly and adamantly insisted on maintaining his factual innocence despite counsel's preferred course."  <u>McCoy</u>,138 S. Ct. at 1510.

In the present case, the state court found that "defendant did not communicate to his attorney, or to the trial court, that he objected to his counsel's concession of guilt during the closing argument."  The record supports the state court's decision.

At the <u>Marsden</u> hearing, petitioner complained about some of counsel's conduct.  (ECF No. 25.)  He told the court that he felt his attorney did not adequately question witnesses who testified that they heard petitioner make inculpatory statements.  He also felt the attorney was not questioning witnesses about the "type of person" they are.  Petitioner did not indicate that he would object to any concession of guilt.  Rather, petitioner expressed concerns about details of his attorney's conduct with respect to the admission of evidence and examination of witnesses.  In denying petitioner's motion, the trial court told petitioner that it was his attorney's job to formulate strategy and petitioner was objecting to strategic decisions.

Petitioner's reliance on <u>McCoy</u> is unavailing.  He presents no evidence that he informed his attorney that he objected to <u>any</u> concession of guilt.  Petitioner's argument is similar to that made by the appellant in <u>United States v. Audette</u>, 923 F.3d 1227 (9th Cir. 2019).  Like petitioner here, Audette sought a hearing before the trial court to challenge his attorney's conduct.  Audette argued before the Ninth Circuit that he had challenged his attorney's refusal to honor his desire to assert his innocence.  However, review of the transcript of that hearing showed that Audette was challenging his attorney's strategies, not the objectives of the defense.  The Ninth Circuit explained why Audette's challenge under <u>McCoy</u> was baseless:

> *McCoy*'s upshot is that a criminal defendant has the autonomy to decide the objectives of his defense. Although a represented defendant surrenders control over tactical decisions, such as which

witnesses to call and which arguments to advance, he retains the authority to make decisions such as "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." With these principles in mind, *McCoy* held that the decision of whether to admit guilt remains with the client. Audette contends that the district court erred under *McCoy* because "there is ample evidence suggesting that Mr. Audette's request for self-representation was based on his desire to assert his innocence and his attorney's refusal to honor that objective." That contention, however, is not supported by the record. At Audette's *Faretta* hearing, Borrelli explained that Audette disagreed with "the arguments that I may make ... he doesn't like some of them." The disagreement between Audette and Borrelli was not over the objectives of Audette's defense, therefore, but instead over the ways to achieve those objectives. Such tactical decisions are within the attorney's province.

Audette, 932 F.3d at 1235-36 (citations omitted).

As set out above, petitioner here also challenged only his counsel's strategy, not the objectives of the defense. The defense at trial focused on both an absence of an intent to kill or greatly harm the victims and self-defense. Petitioner has presented no evidence that he objected, either before the fact or immediately after, to counsel's arguments focusing on his lack of intent and conceding that he had committed simple assault. In fact, after the verdict was read, petitioner addressed the jury about the intent finding: "You people are crazy. I didn't try to kill nobody. She sat here and explained it as good as she possibly could." (RT 480.) Petitioner's challenge to his counsel's concession of guilt to a lesser offense should be denied.

## II. Petitioner's Claims Raised in the State Habeas Petition

In his state court petitions for writ of habeas corpus, petitioner made a number of claims of ineffective assistance of counsel. Petitioner's federal petition is very brief and he simply references his state filings and attaches copies of parts of his appellate briefs. Construing petitioner's pro se filing liberally, this court looks to the claims petitioner raised in his habeas petition to the state supreme court to determine what he seeks to raise here.[5] As best this court

////

////

---

[5] A petitioner can only succeed on federal habeas claims that they raised in the state's highest court. 28 U.S.C. §2254(b)(1). Therefore, any additional claims petitioner may have raised in his petitions to the state superior and appellate court are not considered here.

1  can tell, petitioner alleged ineffective assistance of counsel and made one argument that the trial

2  court erred in denying his <u>Marsden</u> motion.[6]

3        With respect to the claim of trial court error, petitioner can only succeed on that claim by

4  first showing that "the trial court failed to recognize that the defendant's complaints as to his

5  counsel were such that, if true, counsel's performance fell below the Sixth Amendment standard

6  for effective assistance of counsel." <u>Robinson v. Kramer</u>, 588 F.3d 1212, 1216 (9th Cir. 2009).

7  Petitioner must then show that the California Supreme Court's denial of the claim was

8  unreasonable under 28 U.S.C. §2254(d).  During the <u>Marsden</u> hearing, petitioner complained

9  about his counsel's questioning of witnesses and about her failure to bring in some evidence.  In

10  denying the motion, the trial judge noted that many of petitioner's complaints involved strategic

11  decisions, some of the evidence petitioner sought to bring in had been ruled inadmissible, and

12  concluded that petitioner's counsel had "properly represented" him.  Petitioner fails to show the

13  arguments he made at the <u>Marsden</u> hearing demonstrated that counsel's conduct "'so undermined

14  the proper functioning of the adversarial process' that the defendant was denied a fair trial."

15  <u>Richter</u>, 562 U.S. at 110 (The Sixth Amendment does not guarantee "perfect representation, only

16  a 'reasonably competent attorney.'" (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687

17  (1984).)  Petitioner's claim that the trial court erred in denying his <u>Marsden</u> motion should be

18  denied.

19        Petitioner contends his trial attorney was constitutionally ineffective when she:  (1) failed

20  to cross-examine Officers Zumstein and Lagg to show that their reports did not reflect that

21  petitioner told them he had been threatened; (2) failed to introduce evidence that witness Shadena

22  Johnson told an investigator that she saw petitioner backing into the driveway, which would have

23  showed he did not intend to hit Misty Wilson; (3) failed to put on witnesses Lois Keach and

24  Nataysai Barr to testify that he was backing up; (4) failed to cross-examine Wilson about her lies

25  to the 911 operator; (5) failed to question William Muldrow about whether he could have

26

27      [6] Petitioner also asks the court to "compel" charges to be brought against numerous people for the

28  harm they caused him at the time of the events and since then.  These are not claims challenging
   his conviction and therefore are not appropriately raised in a habeas proceeding.

misheard petitioner say he intended to kill the victim due to all the "chaos;" (6) failed to elicit

testimony about threats made by Keys and Wilson to show petitioner acted in self-defense; (7)

failed to elicit testimony that Keys held petitioner's phone "hostage," which prevented him from

calling 911; (8) failed to cross-examine Keys with petitioner's version of the events; (9) failed to

present testimony of Shadena Johnson that she heard petitioner say "I wasn't the bad guy" and

"the other people jumped me;" (10)  failed to present the testimony of W. Espinosa that he heard

petitioner say "the guy in the green Toyota (Ronald Keyes) threatened to kill me;" (11) failed to

argue that petitioner could have killed Keyes when Keyes was standing in the doorway of his car

but did not; (12) failed to question Wilson about her statement to Detective Lagg that petitioner's

car only came into contact with her once; and (13) failed to point out the tire marks on the

driveway to show petitioner was backing up.  (ECF No. 13-14.)

The California Supreme Court summarily denied petitioner's claims.  (ECF No. 13-14 at

1.)  This court looks to the last reasoned decision of a state court on petitioner's claims.  <u>Stanley</u>,

633 F.3d at 859.  Petitioner raised most of the claims listed above in his 2018 petition to the

superior court.  The superior court issued a reasoned opinion.  Therefore, this court considers the

superior court's opinion as the last reasoned decision on those claims.[7]

For the claims petitioner raised in his petition to the California Supreme Court but not in

the petition to the superior court in 2018, petitioner bears the burden of "showing there was no

reasonable basis for the state court to deny relief."  <u>Richter</u>, 562 U.S. at 98.  This court "must

////

////

////

---

[7] It is not entirely clear the look-through doctrine applies here.  Petitioner filed his petition in the
California Supreme Court before the superior court had resolved the 2018 petition. However, the
superior court rendered its decision in May 2019.  (ECF No. 13-11 at 1.)  Because the California
Supreme Court rendered its decision after that date – in June 2019 – application of the look-
through doctrine appears appropriate.  Even if it is not, because this court finds below that the
trial court's denial of petitioner's claims was reasonable, the California Supreme Court's
unexplained denial of the claims was necessarily reasonable as well because when the federal
court reviews an unexplained state court decision, the federal court must determine whether there
is any reasonable basis for the state court's denial.  <u>Richter</u>, 562 U.S. at 98.

determine what arguments or theories supported or, as here, could have supported, the state

court's decision." Id. at 102.[8]

### A. Legal Standards

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1)

his counsel's performance was deficient and that (2) the "deficient performance prejudiced the

defense." Strickland, 466 U.S. at 687.  Counsel is constitutionally deficient if his or her

representation "fell below an objective standard of reasonableness" such that it was outside "the

range of competence demanded of attorneys in criminal cases." Id. at 687-88 (internal quotation

marks omitted).  Prejudice is found where "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A

reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

"The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S.

at 112.

A reviewing court "need not determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  .

. . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice

. . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002)

(quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds, 385 F.3d 1247

(9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177, at *5 (E.D. Cal.

Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954), aff'd, 735 F. App'x 290 (9th Cir. 2018).

### B. Decision of the State Superior Court

> The Court has received and considered the above-entitled petition for
> writ of habeas corpus. The petition is DENIED.

---

[8] Petitioner may have raised some or all of his California Supreme Court claims in his subsequent petitions to the superior and appellate courts in 2020.  (See ECF Nos. 13-12, 13-13.)  The purpose of looking to the last-reasoned decision of a state court is the presumption that the state's higher court adopted that reasoning when it issued a summary denial.  Stanley, 633 F.3d at 859.  Because the California Supreme Court could not, in 2019, have considered any decisions made by courts in 2020, this court does not look to those opinions when reviewing petitioner's claims under 28 U.S.C. § 2254(d).

A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case entitling him to relief. (*In re Bower* (1985) 38 Cal.3d 865, 872.) A petition for writ of habeas corpus should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.) It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions. (*In re Avena* (1996) 12 Cal.4th 694, 722.) To prevail on an ineffective assistance claim, the defendant must establish that the record discloses "no conceivable tactical purpose" for counsel's act or omission. (*Lewis, supra*, 25 Cal.4th at 674-675.) An attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540.) Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

A jury convicted Petitioner of attempted murder and three counts of assault with a deadly weapon, stemming from an incident in which Petitioner intentionally hit the victims with a moving van. [Petitioner] [c]ontends that his attorney performed inadequately by not introducing or emphasizing certain evidence that he claims would have shown that he did not intend to strike the victims. Specifically, he claims the attorney erred by failing to: 1) use statements made by Shadena Johnson to investigators that he said, "I wasn't the bad guy and the other people had jumped him," and that she did not believe Petitioner intentionally struck Misty Wilson and her baby; 2) introduce prior statements from Jonathan Keach that the victim was in disbelief that he had hit her; 3) point out evidence presented at trial depicting tire marks on the side of the driveway where the van hit the garage and the victim; 4) present the tape recording of his police interview to the jury; 5) direct attention to the lack of serious damage to the garage door; 6) use Petitioner's questions while cross-examining William Muldrow; 7) subpoena Claresa Lyons to refute the victim's 911 call; 8) play California Highway Patrol officer's audio in which Petitioner told him that one of the victims assaulted him and provoked the incident; 9) point out the "obvious lies" told by the victims; and 10) introduce statements by Walter Espinosa that Petitioner had reported that the victim was threatening him.

Here, Petitioner has not shown that any of these purported failures by his attorney would have changed the outcome of this case. There was more than sufficient evidence from which the jury could have deduced guilt. There was multiple neighbors who witnessed the event. There was evidence that Petitioner drove a moving van into a car occupied by the victim, Ronald Keyes, smashing the car multiple times. Through his own allegations in this petition, he concedes that his actions were deliberate, although he claims he acted to prevent Keyes from harming him. In addition, Petitioner claims his attorney prevented the introduction of evidence that proves that he hit Misty Wilson and her child on accident, and that he did not see them. But

there was evidence that he was driving forward towards the victims looking at them through the windshield. Also, the responding officer testified that Petitioner told him that he drove at Wilson with the intent to scare her.

Furthermore, he does not explain how some the alleged omissions can even be considered error. For example, he does not explain how the tire marks on the driveway or the recorded police interview would have been crucial to his defense. Likewise, he has not shown that any testimony from Claresa Lyons regarding the victim's credibility would have had any effect, particularly in light of the number of witnesses to the event. In addition, Johnson and Keach both testified on his behalf at trial, negating the necessity of introducing their earlier statements to police. The defense did introduce evidence that Petitioner was operating under the belief that one of the victim's [sic] was threatening him. The introduction of more evidence to that effect from additional witnesses would have been merely cumulative. As to his claim that his attorney erred by not asking witness Muldrow if he had possibly misheard Petitioner's statement that "I was trying to kill the guy in the Toyota," it cannot be viewed as error. His attorney's purported reasoning - the high likelihood that the witness would answer that he did not mishear the statement - was a justifiable reason for not raising the question. Evidence of the lack of damage to the garage door was not relevant to whether he intentionally struck Wilson and her child with the truck. Lastly, none of the "obvious lies" listed in the petition pertained to anything crucial to his defense. For example, he does not show that the accuracy of the length of time the resident of the home had actually owned her dog or the amount of time that passed between when bystanders subdued Petitioner and when police arrived was of such importance that an objection to the information would have impacted the outcome of the case.

As none of Petitioner's claims are meritorious or prejudicial, the petition is denied.

In re Thompson, No. 18HC00595 (Sac. Co. Sup. Ct. May 24, 2019) (ECF No. 13-11 at 1-2).

## C. Discussion

The state court held petitioner failed to show a reasonable likelihood that the purported failures of counsel would have changed the outcome. This court agrees. Below, this court finds petitioner fails to show he was prejudiced by counsel's alleged actions or inactions. The state court decisions denying petitioner's many ineffective assistance of counsel claims were not contrary to or an unreasonable application of clearly established federal law.

### 1. Failure to Elicit Evidence of Threats made by Wilson and Keyes

Petitioner claims that his attorney failed to elicit testimony from several witnesses that petitioner made statements at the time that he had been threatened by Misty Wilson and Ronald

Keyes.  The superior court noted that the defense did put on testimony that petitioner had been threatened by the victims and held that any additional testimony would have been cumulative.

Nataysai Barr testified that when petitioner was asked by bystanders why he had driven at Wilson and Keyes, Barr heard petitioner say "they were trying to fight him, jump him."  (RT 316.)  Shadena Johnson testified that she heard petitioner say they hurt him first.  (RT 330.)

In addition, Officer Zumstein testified that petitioner told him Keyes "verbally threatened him and said he would find him and make him pay for losing the dog."  (RT 296-97.)  Petitioner also told Zumstein that he drove back to the house because he wanted to "get the other gentleman first" and he wanted to "hurt the guy . . . so that he would be scared to come after" petitioner. (RT 297-98.)

The jury thus heard evidence that petitioner's conduct may have been motivated by threats to his safety.  Petitioner contends evidence of the threats would have supported his claim of self-defense.  As the state court pointed out, additional evidence would have been cumulative. Moreover, petitioner fails to show a reasonable likelihood he would have succeeded on a self-defense theory had additional evidence of threats come in.  The evidence presented at trial showed that after the verbal altercation with Wilson and Keyes, petitioner pulled out of the driveway onto the street.[9]  (RT 83, 85 (testimony of Ronald Keyes); ECF  No. 13-1 at 84-85 (Misty Wilson 911 call).)  In fact, Officer Zumstein testified that petitioner told him that he "drove away . . . down to the intersection which is maybe two houses away."  (RT 297.)  "[A]t that point he turned the van around because he decided he was going to get the other gentleman first and he was going to put some hurt on him."  (Id.; see also RT 86-87 (testimony of Ronald Keyes).)

The jury was instructed that petitioner acted in lawful self-defense if he "reasonably believed he was in imminent danger of being killed or suffering great bodily injury."  (RT 401.)

_____

[9] In a supplement, petitioner states that the 911 call shows he did not leave the driveway.  (See ECF No. 12 at 2.)  The transcript of the portion of the 911 call played for the jury does not support petitioner's assertion.  During the call, Misty Wilson stated that petitioner had "just pulled off in a U-haul" before she told the dispatcher, "Oh my God.  He's hitting my car."  (ECF No. 13-1 at 84-85.)

"Belief in future harm is not sufficient no matter how great or how likely the harm is believed to be." (Id.)  Petitioner fails to show a reasonable likelihood the jury would have found that at the time he drove the U-Haul into Keyes and Wilson, he was under a threat of "imminent" harm.

### 2. Failure to Elicit Evidence that Petitioner did not Intend to Hurt Wilson

Petitioner argues evidence that he backed into the driveway was important to show he did not intend to hurt Misty Wilson or the baby.  The defense did put on that evidence.

Shadena Johnson testified that as she was driving by, she saw a "U-Haul backing up into the girl." (RT 322-23.)  Lois Keach testified she saw the U-Haul reverse into the woman and child. (RT 341.)  She also testified that she saw the U-Haul truck that "was backed into a green car." (RT 338.)  As she watched, Keach saw the truck "reverse[] back into the green car again." (Id.)  The U-Haul truck "rammed into the car again." (RT 339.).  Keach's husband, John Keach, who was a passenger in the car, testified that he saw "a U-Haul truck backed into a green car." (RT 351.)  As he watched, the U-Haul truck drove in reverse "into the house and he hit a woman and her child." (RT 352.)

The defense presented additional evidence that petitioner did not intend to hurt Wilson and her baby.  William Muldrow testified on cross-examination that petitioner said he did not mean to hit Wilson or the child. (RT 209-10.)  Officer Zumstein testified that petitioner told him he did not intend to hurt Wilson, just to scare her. (RT 299, 381.)

With respect to the lack of any investigation regarding the tire marks on the driveway, petitioner fails to demonstrate that had they been investigated, they would have shown that petitioner was backing up or that he braked in an attempt not to hit Wilson.  Moreover, his counsel argued in closing that the marks showed petitioner braked to avoid hitting Wilson, as he told police officers. (RT 445.)  Even if the jury found petitioner was driving backward, that fact does not negate a finding that he did so with the intent to harm Wilson.

Petitioner also argues that his attorney should have directed the jury's attention to the fact the garage door was not seriously damaged.  The jury would have seen the extent of the damage to the garage from the photos presented at trial .  Any argument from counsel would have had little or no effect on the jury's consideration of that damage.

He fails to explain how it is reasonably likely any additional evidence would have lead the jury to conclude he did not intend to hurt Wilson.  It's worth noting that the jury did not convict petitioner of attempting to murder Wilson.  Rather, it convicted him of assaulting her.  Despite petitioner's protestations to the contrary, the jury had sufficient evidence to conclude petitioner drove at Wilson with an intent to cause her harm.

### 3. Failure to Adequately Cross-examine Witnesses

Petitioner contends his counsel should have asked William Muldrow whether he may have misheard petitioner say he intended to kill Ronald Keyes.  Because petitioner presents no evidence that Muldrow would have agreed he may have misheard, the only arguable effect of the question would have been to place that possibility in the jury's mind.  Counsel did raise that possibility by arguing in closing that the jury should evaluate Muldrow's statement with caution "because very easily could Mr. Muldrow have heard wrong."  (RT 440.)  Petitioner suffered no prejudice as a result of counsel's failure to ask Muldrow if he might have misheard.

Petitioner also contends his counsel failed to cross-examine Misty Wilson about her "lies" to the 911 operator and her statement to a police officer that petitioner only hit her once.  However, on cross-examination, petitioner's attorney did elicit testimony from Wilson that petitioner hit her one time.  (RT 269.)  To the extent petitioner contends Wilson lied in the 911 call, he does not explain why any attempt to confront her on her statements would have been successful or demonstrated she was lying about something that may have changed the outcome of trial.  During direct examination, Wilson explained that her statement during the 911 call that "now he's going to get fucked up good" was directed to Keyes and meant that Wilson's aunt was going to be angry at petitioner for losing the dog.  (RT 253.)  As explained above, even if petitioner could show Wilson's statement was a threat, he fails to demonstrate he could have succeeded on a theory of self-defense.

Petitioner alleges his attorney failed to elicit testimony that Ronald Keyes held petitioner's phone "hostage," and failed to cross-examine Keyes about petitioner's version of the events.  With respect to the cell phone, petitioner fails to point to any evidence that Keyes did, in fact, have petitioner's cell phone or, even if he did, why that fact would have been relevant to

21

1   petitioner's defenses.  With respect to cross-examining Keyes, petitioner's counsel asked Keyes

2   whether he had threated petitioner and Keyes denied that he had.  (RT 121, 134.)  Petitioner does

3   not explain what else his counsel should have asked and why those questions would have made a

4   difference.

5                    **4.  Failure to Argue Evidence Showing Petitioner did not Intend to Kill Keyes**

6              This claim has no basis because petitioner's counsel did, in fact, argue that the evidence

7   showed petitioner could have killed Ronald Keyes if he had wanted to.  (RT 441.)

8                                              **CONCLUSION**

9              The state court held that petitioner failed to demonstrate that he objected to his attorneys'

10  concession in closing argument that he committed simple assault.  Therefore, the state court

11  concluded, petitioner's Sixth Amendment claim under McCoy v. Louisiana fails.  That decision

12  was not contrary to or an unreasonable application of clearly established federal law.  The state

13  court further held that petitioner failed to establish he was prejudiced under Strickland v.

14  Washington by any further failures of trial counsel.  The state court's rejection of petitioner's

15  various ineffective assistance of counsel claims was not contrary to or an unreasonable

16  application of clearly established federal law.  Because petitioner does not satisfy the

17  requirements of 28 U.S.C. §2254(d), his claims should fail.

18             For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's petition

19  for a writ of habeas corpus be denied.

20             These findings and recommendations will be submitted to the United States District Judge

21  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

22  being served with these findings and recommendations, any party may file written objections with

23  the court and serve a copy on all parties. The document should be captioned "Objections to

24  Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

25  filed and served within seven days after service of the objections.  The parties are advised that

26  failure to file objections within the specified time may result in waiver of the right to appeal the

27  district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the

28  party may address whether a certificate of appealability should issue in the event an appeal of the

1   judgment in this case is filed.  <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must

2   issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

3   Dated:  November 7, 2023

4

5   _____

6   DEBORAH BARNES
    UNITED STATES MAGISTRATE JUDGE

7   DLB:9
    DB Prisoner Inbox/Habeas/S/thom1196.fr

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28